

**United States Copyright Office**
Library of Congress · 101 Independence Avenue SE · Washington, DC 20559-6000 · www.copyright.gov

EXHIBIT A

August 23, 2016

Steven D. Weyhing
General Counsel
Paramount Coffee Company
5133 W. Grand River
Lansing, MI  48906

Re:  Second Request for Reconsideration for Refusal to Register  Joe Unleaded, Joe Tall Dark and Handsome, and Wake Up Joe; Correspondence ID: 1-1B3II3H

Dear Mr. Weyhing:

The Review Board of the United States Copyright Office ("Board") has considered Paramount Coffee Company ("Paramount") second request for reconsideration of the Registration Program's refusal to register 2-Dimensional artwork claims in the works titled "Joe Tall Dark and Handsome," "Wake Up Joe," and "Joe Unleaded" ("Works").  After reviewing the applications, deposit copies, and relevant correspondence, along with the arguments in the second request for reconsideration, the Board affirms the Registration Program's denials of registration.

## I.   DESCRIPTION OF THE WORKS

The Works are bags used for packaging coffee[1] containing lettering, QR codes and barcodes, as depicted in Appendix A.

### A.  Joe Unleaded

The "Joe Unleaded" bag is silver with red, black, and white lettering.  The word "Joe" in large, bold red lettering is prominently featured on the front of the bag.  Above the word "Joe" is a light blue label with the words "Medium Roast Ground Decaf" and "Unleaded" in white lettering.  The bag features additional text in red and black lettering on the sides and back.  A QR code and a barcode appear at opposite sides of the bag.

### B.  Joe Tall Dark and Handsome

The "Joe Tall Dark and Handsome" bag is brown with red, black, and white lettering.  The word "Joe" in large, bold red lettering is prominently featured on the front of the bag.  Above the word "Joe" is a dark brown label with the words "Dark Roast Ground Coffee" and

---

[1] While bags are useful articles, the claims on the application are limited to 2-Dimensional artwork.

Steven D. Weyhing                                    2                                August 23, 2016

"Tall, Dark and Handsome" in white lettering. The bag features additional text in red and black lettering on the sides and back. A QR code and a barcode appear at opposite sides of the bag.

### C. Wake Up Joe

The "Wake Up Joe" bag is red with white and black lettering. The word "Joe" in large, bold white lettering is prominently featured on the front of the bag. Above the word "Joe" is a dark orange label with the words "Medium Roast Ground Coffee" and "Wake Up Joe" in white lettering. The bag features additional text in red and black lettering on the sides and back. A QR code and a barcode appear at opposite sides of the bag.

## II. ADMINISTRATIVE RECORD

On April 10, 2015, Paramount filed three separate applications to register copyright claims in the Works. In a May 26, 2015 letter, a Copyright Office registration specialist refused to register the claims, finding that they "lack the artistic authorship necessary to support copyright claims." Letter from Paula Gillaspie, Registration Specialist, to Steven D. Weyhing, General Counsel, Paramount Coffee Company (May 26, 2015).

In a letter dated August 6, 2015, Paramount requested that the Office reconsider its initial refusal to register the Works. Letter from Steven D. Weyhing, to U.S. Copyright Office (Aug. 6, 2015) ("First Request"). After reviewing the Works in light of the points raised in the First Request, the Office re-evaluated the claims and again concluded that the Works "do not contain a sufficient amount of original and creative artistic or graphic authorship to support a copyright registration." Letter from Stephanie Mason, Attorney-Advisor, to Steven D. Weyhing (Nov. 4, 2015). The Office noted that applicant "filed for registration for the submitted works as a two-dimensional artwork, and not on the basis of text. Therefore, the inquiry into originality is limited to the appearance of the typographic words as they appear and does not extend into the meaning they convey." *Id.*

In a letter dated January 6, 2016, Paramount requested that, pursuant to 37 C.F.R. § 202.5(c), the Office reconsider for a second time its refusal to register the Works. Letter from Steven D. Eyhing, to U.S. Copyright Office (Jan. 6, 2016) ("Second Request"). In that letter, Paramount argued that "[t]he combined expressive elements (including the text/storylines) of the 'Joe' packaging designs pass the 'minimal degree of creativity' test announced by *Feist Publications, Inc. v. Rural Telephone Service*, 499 U.S. [340] (1991)." Second Request at 1. Paramount also asserted that it was not given the opportunity to include "text" in its claims. Second Request at 3-7.

## III. DISCUSSION

### A. The Legal Framework - Originality

A work may be registered if it qualifies as an "original work[] of authorship fixed in any tangible medium of expression." 17 U.S.C. § 102(a). In this context, the term "original" consists of two components: independent creation and sufficient creativity. *See Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345 (1991). First, the work must have been

Steven D. Weyhing                            3                             August 23, 2016

independently created by the author, *i.e.*, not copied from another work. *Id.* Second, the work must possess sufficient creativity. *Id.* Only a modicum of creativity is necessary, but the Supreme Court has ruled that some works (such as the alphabetized telephone directory at issue in *Feist*) fail to meet even this low threshold. *Id.* The Court observed that "[a]s a constitutional matter, copyright protects only those constituent elements of a work that possess more than a *de minimis* quantum of creativity." *Id.* at 363. It further found that there can be no copyright in a work in which "the creative spark is utterly lacking or so trivial as to be virtually nonexistent." *Id.* at 359.

      The Office's regulations implement the longstanding requirement of originality set forth in the Copyright Act and described in the *Feist* decision. *See, e.g.*, 37 C.F.R. § 202.1(a) (prohibiting registration of "[w]ords and short phrases such as names, titles, slogans; familiar symbols or designs; [and] mere variations of typographic ornamentation, lettering, or coloring"); *id.* § 202.10(a) (stating "to be acceptable as a pictorial, graphic, or sculptural work, the work must embody some creative authorship in its delineation or form"). Some combinations of common or standard design elements may contain sufficient creativity with respect to how they are juxtaposed or arranged to support a copyright. Nevertheless, not every combination or arrangement will be sufficient to meet this test. *See Feist*, 499 U.S. at 358 (finding the Copyright Act "implies that some 'ways' [of selecting, coordinating, or arranging uncopyrightable material] will trigger copyright, but that others will not"). A determination of copyrightability in the combination of standard design elements depends on whether the selection, coordination, or arrangement is done in such a way as to result in copyrightable authorship. *Id.*; *see also Atari Games Corp. v. Oman*, 888 F.2d 878 (D.C. Cir. 1989).

      A mere simplistic arrangement of non-protectable elements does not demonstrate the level of creativity necessary to warrant protection. For example, the United States District Court for the Southern District of New York upheld the Copyright Office's refusal to register simple designs consisting of two linked letter "C" shapes "facing each other in a mirrored relationship" and two unlinked letter "C" shapes "in a mirrored relationship and positioned perpendicular to the linked elements." *Coach Inc. v. Peters*, 386 F. Supp. 2d 495, 496 (S.D.N.Y. 2005). Likewise, the Ninth Circuit has held that a glass sculpture of a jellyfish consisting of clear glass, an oblong shroud, bright colors, vertical orientation, and the stereotypical jellyfish form did not merit copyright protection. *See Satava v. Lowry*, 323 F.3d 805, 811 (9th Cir. 2003). The language in *Satava* is particularly instructive:

> It is true, of course, that a combination of unprotectable elements may qualify for copyright protection. But it is not true that *any* combination of unprotectable elements automatically qualifies for copyright protection. Our case law suggests, and we hold today, that a combination of unprotectable elements is eligible for copyright protection only if those elements are numerous enough and their selection and arrangement original enough that their combination constitutes an original work of authorship.

*Id.* (internal citations omitted).

      Finally, while the Office may register a work that consists merely of geometric shapes, for such a work to be registrable, the "author's use of those shapes [must] result[] in a work that, as a whole, is sufficiently creative." COMPENDIUM (THIRD) § 906.1; *see also Atari Games Corp.*,

Steven D. Weyhing                           4                          August 23, 2016

888 F.2d at 883 ("[S]imple shapes, when selected or combined in a distinctive manner indicating some ingenuity, have been accorded copyright protection both by the Register and in court."). Thus, the Office would register, for example, a wrapping paper design that consists of circles, triangles, and stars arranged in an unusual pattern with each element portrayed in a different color, but would not register a picture consisting merely of a purple background and evenly-spaced white circles. COMPENDIUM (THIRD) § 906.1.

### B. Analysis of the Works

After carefully examining the Works and applying the legal standards discussed above, the Board finds that the Works do not contain the requisite creative authorship necessary to sustain a claim to copyright.

While the Works contain substantial text, Paramount submitted a claim in 2-Dimensional artwork for the Works that did not identify the textual elements as part of its claim. The bulk of Paramount's Second Request is focused on arguing that the Board should consider these textual elements in addition to the 2-Dimensional artwork claimed on the application. For example, Paramount states that it "fully intended to register the combination of all authorship in the original works submitted by on-line application to the Office" but if the "on-line applicant chooses 'Work of the Visual Arts', the 'Author Created' field does not provide a 'text' box for the applicant to check and identify the multiple forms of authorship." Second Request at 3 (emphasis omitted). The Board, however, agrees with the Registration Program that the scope of the Work must be based on the elements claimed in the application. As the *Compendium* explains, Paramount had the opportunity to include "text" in the "Other" field if the terms provided by the checkboxes did not fully describe the copyrightable authorship that Paramount intended to register. COMPENDIUM (THIRD) § 618.4(A). This instruction is also found in the Office's electronic registration application ("eCO") "Help" tool, positioned next to the "Other" field, which explains "Other may be used to briefly state (in general terms) authorship that is not covered by the boxes provided and for which you seek this registration."

Paramount contends that the Office should have contacted it to clarify whether it intended to also claim the textual elements in the Works based on its registration practices. Second Request at 5 (citing COMPENDIUM (THIRD) § 618.4(A)). The Board disagrees that the Office was obligated to contact Paramount to clarify its intent, particularly as the application was neither unclear nor contradicted by the deposit materials. *See* COMPENDIUM (THIRD) § 618.4(A) (outlining circumstances where registration specialists will contact applicants). Registration specialists do not contact each applicant to make sure that all possible authorship contained in a work has been claimed on a registration application; rather, it is up to the applicant to "identify all of the copyrightable authorship that the applicant intends to register." COMPENDIUM (THIRD) § 618.8(G).

Finally, Paramount requests that "since no final agency action has occurred" the Board should allow it to "amend[] the applications to include that text, so that a complete review of all components of the works in combination can take place." Second Request at 3. The Board declines to depart from the Office's established administrative practices to allow for an amendment at this stage. If Paramount wants now to register claims in text for the Works it may submit new registration applications with claims in "text."

Steven D. Weyhing 5 August 23, 2016

Accordingly, the Board limits its analysis to whether there is enough creative 2-Dimensional artwork authorship on each Work to support claims in copyright. The Board considers the text insofar as they are used pictorially or graphically to result in 2-Dimensional artwork, as opposed to evaluating the use of letters as textual elements, *i.e.,* to tell stories and to describe the contents of the packaging. Reviewing the Works for their individual elements, the Works' colors, lettering, and typeface are not copyrightable. *See* 37 C.F.R. § 202.1(a) (addressing mere variations of typographic ornamentation, lettering or coloring); *id.* at 202.1(e) (addressing "typeface as typeface"); COMPENDIUM (THIRD) §§ 906.3, 906.4, 913.1. Nor does the combination of these noncopyrightable elements result in authorship with sufficient creativity to sustain a copyright claim: Each of the Works is comprised of a solid colored background, a solid colored label, text, a QR code and a barcode. The placement of these elements is standard for packaging and as such not copyrightable. *See* Compendium (Third) 906.5, 913.1 ("The Office typically refuses . . . [m]ere spatial placement or format of . . . logo[] or label elements").

## IV. CONCLUSION

For the reasons stated herein, the Review Board of the United States Copyright Office affirms the refusal to register the copyright claim in the Work. Pursuant to 37 C.F.R. § 202.5(g), this decision constitutes final agency action in this matter.

BY: *[signature]*

Regan A. Smith
Copyright Office Review Board

UNWIND #2

12.2145" 310.3mm c.o.

## Brewing Joe.

For every cup combine
2 tablespoons of ground coffee
6 ounces of filtered water

### For perfect results:

- Adjust to taste with hot water after brewing.
- Keep brewed coffee hot and fresh in carafe.
- Store coffee in package or sealed container, away from heat and direct sunlight.
- Always brew with fresh or filtered water.

## Joe is good people.

Joe comes from good stock—
high-quality green Arabica beans
from the best growers in the world.
And it's roasted by people who know
their stuff—the coffee-loving folks
at Paramount Coffee, an employee-
owned business in Lansing, Michigan.

JoeKnowsCoffee.com

NET WT.
12 oz (340g)

# Joe
Coffee ™

**Dark Roast**
**Ground Coffee**

**Tall, Dark and Handsome**

## Whad'ya know Joe?

Joe knows it's good to share.
That's why Joe supports
Coffee growing families.

Paramount Coffee Company
Lansing MI 48912

### Joe Knows Coffee

Ingredient: Coffee

0 22944 20876 8

DESIGN BY
MrMrs.co

17.5mm | 32.5mm | 165mm | 32.5mm | 32.748mm | 30mm



